# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

MICHAEL WEAVER,      :
     :
     Plaintiff,      :
     :        Civil No. 22-4925 (CPO/MJS)
     v.      :
     :        **OPINION**
BARRETTE OUTDOOR LIVING, INC., :
     :
     Defendant.      :
_____ :

**O'HEARN**, United States District Judge:

This matter comes before the Court on Defendant's Motion for Summary Judgment (the "Motion") (ECF No. 25), pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.  BACKGROUND

### A.  Factual Background[1]

Plaintiff Michael Weaver ("Plaintiff" or "Mr. Weaver") alleges that his former employer, Defendant Barrette Outdoor Living, Inc. ("Defendant" or "Barrette"), failed to accommodate his disability and that he was terminated because of his disability in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq.* (Compl. ¶¶ 39–69).

Plaintiff began employment as an aluminum fabricator at Defendant's facility in Egg Harbor City, New Jersey, on November 9, 2021. (*Id.* ¶ 8; DSOMF ¶¶ 1–2). Plaintiff suffers from

---

[1] The Court cites to the undisputed material facts set forth in Defendant's Statement of Material Facts (ECF No. 25-2, Ex. A, Defendant's Statement of Material Facts ("DSOMF")), to which Plaintiff has admitted, *see* (ECF No. 28-2, Plaintiff's Response to Defendant's Statement of Material Facts ("PSOMF")). The Court cites to Plaintiff's Complaint, *see* (ECF No. 1, Ex. A., Compl.), and Defendant's declarations where necessary to provide additional factual context.

1

Type 1 diabetes mellitus, which causes him to experience hypoglycemic episodes. (DSOMF ¶¶ 16, 20). In December 2021, Plaintiff was prescribed a new insulin medication that causes him to experience a side effect of drowsiness. (*Id.* ¶ 13; Compl. ¶¶ 18–19). Within a few days of Plaintiff's change in medication, Plaintiff fell asleep while on break, resulting in disciplinary action. (DSOMF ¶¶ 11–15). Thereafter, Plaintiff sought an accommodation from Defendant, and Plaintiff's physician completed the necessary form on December 23, 2021. (*Id.* ¶¶ 18–20). The accommodations requested that Plaintiff:

> Should have meals at regularly scheduled times. Patient should also have the ability to test blood sugar is [sic] he feels hypoglycemic, and should have the ability to snack and drink through the day. Also due to medication prescribed patient should be able to use the bathroom as needed.

(ECF No. 25-4, Ex. J, Interactive Process Questionnaire ¶ 9). Defendant approved the requested accommodations. (DSOMF ¶¶ 21–22).

On February 24, 2022, Plaintiff clocked in "more than seven minutes early" without reporting to his workstation in violation of Defendant's company policy, resulting in a final written warning. (ECF No. 25-5, Ex. O, Cert. Michael Hutter ¶ 3; ECF No. 25-6, Ex. A, Cert. Megan Jackson ¶¶ 10–12). The written warning is dated February 25, 2022, and is signed by both Plaintiff and his then-manager, Megan Jackson. (ECF No. 25-4, Ex. K, Feb. 25 Employee Warning Notice). Defendant's Employee Handbook contains a list of conduct characterized as either Group 1 Violations or Group 2 Violations. (ECF No. 25-4, Ex. O, Employee Handbook). Failure to timely report to one's workstation or knowingly misrepresenting time worked is a Group 1 Violation.

(*Id.*). Group 1 and Group 2 offenses "can result in termination on the first offense, depending on severity or intent." (*Id.*).[2]

Approximately one month later, on March 30, 2022, Plaintiff's supervisor, Michael Hutter, observed Plaintiff returning to work late from his lunch break and issued him a verbal warning for taking an excessively long break. (ECF No. 25-5, Ex. A, Michael Hutter Employee Statement; Cert. Michael Hutter ¶ 5). Plaintiff indicated at that time that he understood the break policy and would adhere to it going forward. (Cert. Michael Hutter ¶ 5).[3]

About one week later, on April 7, 2022, Plaintiff alleges that he experienced hot flashes as a symptom of an imbalance in his blood glucose levels. (Compl. ¶ 32). Surveillance camera footage of the break area showed Plaintiff leaving the building multiple times during the day and being present in the designated smoking area: first, at 5:55 a.m.; second, at 6:51 a.m. until 6:54 a.m.; and third, at 11:11 a.m. until 11:15 a.m. (DSOMF ¶¶ 38–40; Cert. Michael Hutter ¶ 7).[4]

After returning from lunch that same day, Mr. Hutter escorted Plaintiff to the office of Christal Torres, Defendant's Human Resources Director, who informed Plaintiff that he was being

---

[2] Sleeping on duty, the first conduct for which Plaintiff was disciplined in December 2021, is a Group 2 Violation. (*Id.*). Plaintiff signed a document on November 9, 2021, acknowledging that he had received a copy of the Employee Handbook and that he read, understood, and agreed to comply with it. (ECF No. 25-4, Ex. N, Handbook Acknowledgement and Agreement).

[3] Barrette employees are allowed one fifteen-minute break in the morning, one thirty-minute lunch break, and one fifteen-minute break in the afternoon. (DSOMF ¶ 35).

[4] Plaintiff contests the timing of these breaks because he alleges that the surveillance footage consisted of still images that were not date- or time-stamped. (PSOMF ¶¶ 38–40). However, Plaintiff admitted in his deposition to seeing a time stamp in at least one of the surveillance photos he was shown. *See* (ECF No. 25-4, Ex. B, Weaver Dep. Tr. 138–41). Plaintiff also admitted that he was in the outside smoking area from 6:51 a.m. to 6:54 a.m. and again at 11:11 a.m. to 11:15 a.m. on April 7, 2022, as depicted in the surveillance photos. He does, however, deny that the images *conclusively* depict him at 5:55 a.m. on that date. (PSOMF ¶ 38). Otherwise, there is no dispute as to the unauthorized nature of Plaintiff's multiple breaks or that he failed to notify staff he was taking them.

terminated for failing to notify staff that he was taking unauthorized breaks. (DSOMF ¶ 42). Ms. Torres initially was unaware of Plaintiff's accommodations, but Plaintiff told her that he often sought breaks to get "outside for air and have a quick cigarette" because he gets hot, and he admitted that his accommodations did not include smoke breaks. (ECF No. 25-7, Ex. A, Investigation Recap 2).[5] After reviewing Plaintiff's accommodation documentation, Ms. Torres told Plaintiff that "the paperwork does not mention outside air needed for overheating or frequent smoke breaks." (*Id.* at 3). Plaintiff admitted that he went outside during the breaks at issue to smoke, and not because he was feeling hypoglycemic or to test his blood sugar. (DSOMF ¶ 45; Weaver Dep. Tr. 138–41).[6] Defendant terminated Plaintiff. (DSOMF ¶ 46).

### B. Procedural Background

Plaintiff initially filed his Complaint in the Superior Court of New Jersey, Atlantic County, on June 27, 2022. (Compl.). On August 5, 2022, Defendant timely removed to this Court. (ECF No. 1, Notice of Removal ¶ 2).

---

[5] In Defendant's "Investigation Recap" detailing Plaintiff's termination, Ms. Torres stated:

> I was not aware of an active accommodation at this time. I informed Michael of this by say [sic], "Michael I am not aware of an accommodation for you on record . . . Does not mean it is not active, but I started in February and still learning [sic] where everything is located, and I did not see anything noted in his file." I asked Michael to provide me with the accommodate [sic] details he claims he was approved for. He said, "I get to go on as many breaks as I needed when my diabetes starts to act up." I then asked, "this includes smoke breaks?" Michael, "well no my doctors actually wants me to stop smoking, but I get hot so I got outside for air and have a quick cigarette."

(Investigation Recap 2).

[6] In opposing the Motion, Plaintiff asserts that he "was utilizing one of his regular breaks to smoke" and that during one of the breaks at issue he also "went outside to retrieve his blood glucose monitor." (PSOMF ¶ 45). However, when Plaintiff was asked directly at his deposition whether he went outside to check his blood sugar Plaintiff responded in the negative. (Weaver Dep. Tr. 139:17–19). Plaintiff cannot now assert differently in an attempt to create a factual dispute.

On September 22, 2023, Defendant filed a Motion for Summary Judgment. (ECF No. 25, Mot.). On October 2, 2023, Plaintiff filed opposition. (ECF No. 28, Br. Opp'n). On October 10, 2023, Defendant filed a reply brief in further support of its Motion. (ECF No. 29, Reply Br.). Since the filing of the Motion, Plaintiff has abandoned his failure to accommodate claim alleged in Count I. *See* (ECF No. 28-1, Pl.'s Proposed Order). Thus, the only remaining claim is disability discrimination under the NJLAD as alleged in Count II.

## II.   JURISDICTION

The Court has subject-matter jurisdiction based upon diversity pursuant to 28 U.S.C. §§ 1332(a) and 1441. (Notice of Removal ¶¶ 11–20). Plaintiff is a citizen of New Jersey. (*Id.* ¶ 18; Compl. ¶ 1). Defendant Barrette is a corporation that is incorporated in Ohio and with its principal place of business in Ohio; it is therefore a citizen of Ohio. *See Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (holding that a corporation's "principal place of business" is its "nerve center," which is typically its corporate headquarters); (Notice of Removal ¶ 17).

## III.   LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of any "genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The Court's role is not to weigh the evidence, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), and credibility determinations are for the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Only evidence "capable of being admissible at trial" may be considered on a motion for summary judgment. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Such evidence may include declarations and supporting documents. *See* Fed. R. Civ. P. 56(c)(1)(A).

## IV. DISCUSSION

The NJLAD prohibits employment discrimination based on actual or perceived disability. N.J. Stat. Ann. § 10:5-12(a). Plaintiff argues that he was terminated "as a consequence of his real or perceived disability." (Compl. ¶ 67). Defendant argues that Plaintiff fails to establish a prima

facie case of disability discrimination or, alternatively, even if he makes a prima facie case, that Plaintiff has failed to set forth facts from which a reasonable jury could find that Defendant's proffered, non-discriminatory reason for his termination was pretextual. (Mot. 10, 17).

A.    ***McDonnell Douglas* Framework for Discrimination Claims**

Disability discrimination claims under the NJLAD are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See, e.g.*, *Victor v. State*, 4 A.3d 126, 140–41 (N.J. 2010) (applying the *McDonnell Douglas* framework for NJLAD disability discrimination claim).

*McDonnell Douglas* first requires the plaintiff to establish a prima facie case of discrimination. *See* 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). To satisfy that burden, the defendant need only introduce evidence, which, if taken as true, would permit the trier of fact to conclude that a non-discriminatory reason existed for the disputed employment decision. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 529 (1993). Finally, if a defendant has proffered a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff, who must point to evidence that would allow a reasonable jury to find that the defendant's reason was pretextual for discrimination. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 525–27 (3d Cir. 1992).

To establish pretext, the plaintiff must point to admissible evidence that allows the factfinder to either: (1) disbelieve the defendant's stated reason, or (2) believe that a discriminatory reason was more likely than not the cause of the plaintiff's termination. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Such evidence must show "such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (internal citations and quotation marks removed). The plaintiff must show not only that the "proffered reason was wrong, but that it was so plainly wrong that it cannot have been [its] real reason." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

"Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "[T]he factual dispute at issue is whether discriminatory animus motivated the employer." *Id.* at 765.

### B.     Plaintiff Makes a Prima Facie Case

To make a prima facie case of disability discrimination under the NJLAD, a plaintiff must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Marsh v. GGB, LLC*, 455 F. Supp. 3d 113, 124 (D.N.J. 2020) (citing *Stewart v. Cnty. of Salem*, 274 F. Supp. 3d 254, 259 (D.N.J. 2017)).

Here, Defendant does not dispute the first or third prongs. Defendant concedes that Plaintiff suffers from diabetes, which qualifies as a disability under the NJLAD. *See Fado v. Kimber Mfg., Inc.*, No. 11-4772, 2016 WL 3912852, at *5 (D.N.J. July 18, 2016) (noting that "both the federal courts in this district and the state courts of New Jersey have found that diabetes qualifies as a disability under the NJLAD"). There is also no question that termination from employment constitutes an adverse employment action. *See id.* (citing *Rogers v. Alt. Res. Corp.*, 440 F. Supp.

2d 366, 374 (D.N.J. 2006)). Defendant, however, argues that Plaintiff fails to meet the second prong because he "cannot show that he was qualified to perform the essential duties on [sic] his job given his continued and excessive unauthorized breaks." (Mot. 2).

Defendant relies upon cases involving attendance where courts have found that a plaintiff fails to meet the second prong. For example, Defendant cites *Rivera v. State of N.J., Dep't of Human Servs.*, 2022 WL 2813275, at *3 (N.J. Super. Ct. App. Div. Jul. 19, 2022), where the court stated that "regular, reliable, and predictable attendance is a necessary element of most jobs" and that "[a]n employee who does not come to work cannot perform any of her [or his] job functions, essential or otherwise." However, this case, and the others cited by Defendant, are distinguishable. Here, there is no evidence that Plaintiff regularly failed to attend his job. Certainly, Plaintiff's violations for clocking in early or taking short but unauthorized breaks fall short of his employer's expectations. But such conduct is simply not the same as an employee whose presence in the workplace is so unreliable or unpredictable that the employee should be deemed not qualified to perform the essential functions of the job. Moreover, in granting Plaintiff's request for an accommodation, Defendant necessarily and implicitly acknowledged his ability to perform the essential functions of the job. *See* (Interactive Process Questionnaire ¶ 7 (stating in the negative that Plaintiff's disability precludes him from performing the essential functions of the job, "including regular and predictable attendance"); Weaver Dep. Tr. 80 (noting same)).

In short, all that is needed to satisfy the second prong is evidence that the plaintiff was actually performing the job prior to termination, and Plaintiff meets that standard. *Grande v. St. Clare's Health Sys.*, 164 A.3d 1030, 1039 (N.J. 2017) (citation and internal quotation marks omitted).

### C. Plaintiff Fails to Rebut Defendant's Proffered, Non-Discriminatory Reason for His Termination or Set Forth Evidence from Which a Reasonable Jury Could Find Pretext

Having determined that Plaintiff has set forth a prima facie case, the burden shifts to the Defendant to set forth a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant has done so by citing Plaintiff's misconduct—specifically, taking unauthorized breaks despite multiple warnings. Thus, the key question is whether Plaintiff has set forth sufficient evidence from which a reasonable jury could reject Defendant's proffered reason and find that "discriminatory animus motivated the [Defendant]" to terminate him. *Fuentes*, 32 F.3d at 765.

Specifically, Defendant explains the reason for Plaintiff's termination as follows: "Given that Mr. Weaver had an active final written warning and was verbally counseled days earlier about his failure to follow the break schedule, the decision was made to terminate Mr. Weaver's employment." (Cert. Michael Hutter ¶ 8). Plaintiff asserts that Defendant "fabricated a non-discriminatory reason to support its termination of Plaintiff" and that there is "absolutely no evidence that Defendant's decision to terminate Plaintiff was motivated by any legitimate business reason." (Br. Opp'n 7–8). Plaintiff states that Defendant's assertion that it gave "repeated written warnings" is itself a fabrication—specifically, that the warnings Defendant "claimed to have relied upon isn't plural; it is singular." (Br. Opp'n 8). The Court does not find these arguments persuasive.

Although Plaintiff was issued only one *written* warning on February 25, 2022, it is not the only warning that Plaintiff received.[7] First, the February 25 warning, which Plaintiff signed, was

---

[7] Defendant initially suspended Plaintiff for sleeping in his vehicle while on duty in December 2021, but it decided against termination pending receipt of a doctor's note to substantiate Plaintiff's claim that he fell asleep due to a medical condition. (Cert. Megan Jackson ¶ 5). Upon receipt of that note, Defendant granted Plaintiff an accommodation, excused Plaintiff's prior misconduct, and allowed him to return to work. (*Id.* ¶¶ 6–7). This incident was not identified by Defendant as a reason for the subsequent warnings or as having any impact on the decision to terminate. (Investigation Recap 3).

clearly marked as a "Final Written Warning." (Feb. 25 Employee Warning Notice). Plaintiff acknowledged that he understood the warning to be final and that he could be terminated for any further violations. (Weaver Dep. Tr. 104–05). Next, just one month later on March 30, 2022, Plaintiff was given a verbal warning for taking excessive breaks. (Michael Hutter Employee Statement). Defendant further submitted a sworn declaration from Mr. Hutter again confirming that he gave Plaintiff a verbal warning on March 30, 2022, in which he notified Plaintiff that his unauthorized breaks on that day were in violation of company policy. (Cert. Michael Hutter ¶ 5). Plaintiff indeed admitted he was given this verbal warning. (Weaver Dep. Tr. 105–09). Thus, Plaintiff received at least one verbal warning and one written warning and was clearly on notice that he could be terminated for further violations of Defendant's company policy. Plaintiff's argument that there is a factual question as to whether he received "repeated written warnings" or just one written warning and numerous verbal warnings is belied by the undisputed evidence in the record.

Plaintiff next asserts that Defendant directed Mr. Hutter and others "to create statements after Plaintiff was terminated" and that the statements were made "in an effort to bolster the perceived legitimacy of it reasons for terminating Plaintiff." (Br. Opp'n 9). However, Plaintiff points to nothing in the record to create a genuine issue of disputed fact as to the factual assertions contained in any of the declarations. Plaintiff's unsupported, conclusory arguments are insufficient to withstand summary judgment.

In summary, Plaintiff's general, conclusory, and unsupported arguments of "inconsistencies" that might cause a "reasonable factfinder [to] find those reasons unbelievable and not credible," (*Id.* at 11), fall well short of his burden to point to "concrete evidence in the record" from which a jury could reject Defendant's proffered reasons and find pretext. *See Orsatti*,

71 F.3d at 484; *see also Fuentes*, 33 F.3d at 765 (noting that "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent"); *Klimek v. United Steelworkers Local 397*, 618 F. App'x 77, 80 (3d Cir. 2015) (affirming summary judgment on NJLAD discrimination claim because plaintiff's evidence fell short of establishing pretext). Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and none of Plaintiff's arguments come close to meeting his burden to show facts from which a reasonable jury could reject Defendant's proffered reasons for his termination and find pretext. For example, Plaintiff points to no statements by any of his supervisors or others related to his disability from which a jury could find a discriminatory animus. (DSOMF ¶¶ 17, 23–24); *see also Shabazz v. New Jersey Transit*, No. 14-4565, 2017 WL 3605314, at *4 (D.N.J. Aug. 22, 2017) (granting summary judgment on discrimination claim when plaintiff failed to point to evidence that his supervisors expressed animus towards him). Nor does Plaintiff point to any evidence that he was treated less favorably than any other employees with respect to the action taken against him. *See Fuentes*, 32 F.3d at 765 (listing as an example of evidence of pretext "that the employer treated other, similarly situated persons not of his protected class more favorably"). Indeed, Defendant identifies another non-disabled employee who was treated in the same manner as Plaintiff. (DSOMF, ¶¶ 28, 31–32).

Finally, the fact that Defendant not only granted Plaintiff's requested accommodations, but retroactively removed the prior discipline that had been issued against Plaintiff in December 2021, when the law plainly did not require it to do so, evidences Defendant's good faith and negates any allegation of a discriminatory animus. *See Lassiter v. Children's Hosp. of Philadelphia*, 131 F. Supp. 3d 331, 351 (E.D. Pa. 2015) ("The ADA does not mandate that an employer excuse an

employee's previous misconduct, even if it was precipitated by his or her disability.") (citing *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012)); *see also* U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2003-1, Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA ¶ 36 (2002) ("[S]ince reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.")); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999) (noting that "employers can show their good faith in a number of ways," including showing "some sign of having considered [the] employee's request").

In summary, the non-disputed evidence establishes that, on April 7, 2022, Plaintiff was observed going outside to smoke at least twice before his permitted lunch break. (DSOMF ¶¶ 37–40). He was admittedly not exercising his rights to an accommodation as he was not testing his blood sugar, was not eating a meal or snack, and was not using the bathroom; rather, he was smoking. At the time of his termination, Plaintiff had already been issued a final written warning two months earlier when he failed to report to his workstation despite clocking in early. (*Id.* ¶ 31; PSOMF ¶ 31). Plaintiff understood that this written warning was a final one and that any further violations of company policy could lead to his termination. (Weaver Dep. Tr. 105). He had also received a verbal warning on March 30, 2022, and was reminded to follow the break schedule. (DSOMF ¶ 36; PSOMF ¶ 36). There are simply no facts in the record from which a reasonable juror could infer a discriminatory animus or find that Plaintiff's disability was "more likely than not [] a motivating or determinative cause" of his termination, *see Fuentes*, 32 F.3d at 765, or that Defendant's stated reason for termination was "so plainly wrong that it cannot have been [its] real reason." *See Keller*, 130 F.3d at 1109; *see also Lane v. Sears Logistics Servs., Inc.*, No. 11-6157, 2014 WL 1301549, at *4 (D.N.J. Mar. 31, 2014) (noting that "speculations, generalities, and gut

feelings, however genuine, do not permit an inference of discrimination to be drawn"). Accordingly, Defendant is entitled to judgment as to Plaintiff's disability discrimination claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 25) is **GRANTED** in its entirety. An appropriate order follows.

Dated: June 28, 2024

CHRISTINE P. O'HEARN
United States District Judge